**UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLORADO**

|  |  |  |
|---|---|---|
| SUNCOR ENERGY (U.S.A.) INC., a Delaware corporation | : : : : | |
| Plaintiff, | : : | |
| -v- | : : | Civil Action No. |
| PHILLIPS 66 COMPANY, a Delaware corporation | : : : | JURY DEMAND |
| and | : : | |
| CONOCOPHILLIPS COMPANY, a Delaware corporation | : : : : | |
| Defendants. | : : | |

**COMPLAINT**

Plaintiff Suncor Energy (U.S.A.) Inc. ("Suncor") brings this action for injunctive and compensatory relief against defendants Phillips 66 Company ("PSX") and ConocoPhillips Company ("ConocoPhillips") (collectively, "Defendants"). On April 16, 2013, PSX notified Suncor that the parties' 10-year exclusive Phillips 66 Trademark License Agreement and the franchise relationship between them will terminate, and will not be renewed, at the end of the day on July 31, 2013. For the past 10 years, Suncor has been the exclusive supplier of Phillips 66 branded motor fuel and other petroleum products in Colorado pursuant to this agreement. Defendants have violated the Petroleum Marketing Practices Act because PSX issued a notice of non-renewal prior to failing to agree on new franchise terms, and proposed fundamental changes to the parties' franchise agreement that were determined in bad faith and not in the normal course of its business. PSX's conduct and the Defendants' decision to non-renew Suncor was a pretext

1

for their desire to end their franchise relationship with Suncor so PSX could be the only seller of Phillips 66 branded motor fuel in Colorado, would not have to compete with Suncor with respect to the Phillips 66 brand, and could reestablish contractual relationships that the Federal Trade Commission required ConocoPhillips to divest in 2003. Suncor is entitled to injunctive relief to prevent Defendants from terminating their franchise agreement with Suncor on August 1, 2013.

## THE PARTIES

1.    Suncor is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Colorado. Suncor is engaged in the refining, purchasing, marketing and distribution of petroleum products, including motor fuel, in Colorado.

2.    PSX is a corporation organized and existing under the laws of the State of Delaware with a principal place of business located in Texas. PSX is a refiner and marketer of petroleum products, including motor fuel, in the United States. PSX refines, markets and sells petroleum products, including motor fuel, under trademarks including "PHILLIPS," "66," and "PHILLIPS 66," as well as "CONOCO" and "76." Upon information and belief, PSX owns the trademarks "PHILLIPS," "66," and "PHILLIPS 66," as well as "CONOCO" and "76."

3.    PSX is registered to conduct business in the State of Colorado. PSX currently markets and sells petroleum products under the "CONOCO" trademark in Colorado.

4.    ConocoPhillips is a corporation organized and existing under the laws of the State of Delaware with a principal place of business located in Texas. ConocoPhillips is registered to conduct business in the State of Colorado. ConocoPhillips is a refiner and marketer of petroleum products, including motor fuel, in the United States. ConocoPhillips previously refined, marketed, and sold petroleum products, including motor fuel, under trademarks it owned, including "PHILLIPS," "66," and "PHILLIPS 66," as well as "CONOCO" and "76."

2

**JURISDICTION AND VENUE**

5. This Court has original jurisdiction under the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. §§ 2801 *et seq.*, 28 U.S.C. § 1331, and the Court's pendent and/or ancillary jurisdiction.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391 in that the claims and causes of action alleged arose in this District. The Defendants are found and/or transact business in this District and are subject to personal jurisdiction in this Court.

7. Personal jurisdiction over the Defendants is vested in this Court under Colorado Revised Statute § 13-1-124, and is consistent with the Due Process Clause of the U.S. Constitution because the Defendants transacted business in Colorado, purposefully created a substantial connection with Colorado, deliberately engaged in significant activities in Colorado, willfully availed themselves of the privilege of conducting business in Colorado, and caused damages in Colorado by their acts or omissions.

**FACTS**

**Background and the Agreement**

8. On February 7, 2003, the Federal Trade Commission ("FTC") ordered Defendants' predecessors, Conoco Inc. ("Conoco") and Phillips Petroleum Company ("Phillips"), as a condition of their proposed merger to divest certain assets they owned in Colorado including, among other things, a petroleum refinery in Commerce City, Colorado, and all of Phillips' Colorado supply agreements, including those relating to Phillips 66 branded motor fuel (the "FTC Order"). Ex. A (Decision and Order of the Federal Trade Commission dated February 7, 2003). In addition, the FTC ordered Defendants' predecessors to grant for a period of 10 years the exclusive right to use in Colorado all brand names (1) owned or licensed

3

to Phillips and, (2) used by Phillips or Phillips branded sellers in Colorado (the "Colorado Assets") to a single acquirer that received the prior approval of the FTC. *Id.*

9.    A central purpose of the FTC Order was to ensure competition between the Phillips and Conoco brands.  The FTC ordered the divestiture of the Colorado Assets and the license of the Phillips brands to a third party in Colorado because it believed that a failure to do so "would violate federal antitrust laws and lead to decreased competition . . . , particularly in the Rocky Mountain region of the United States."  Ex. B (Federal Trade Commission Press Release "With Conditions, FTC Approves Merger of Phillips and Conoco," August 30, 2002).  In the absence of the divestiture of the Colorado Assets and the license of the Phillips brands to a third party in Colorado, "the combination of Phillips and Conoco would allow the new firm to raise prices unilaterally or in combination with other companies . . . ." *Id.*

10.    Effective on or about August 1, 2003, Suncor acquired the Colorado Assets from ConocoPhillips with the approval of the FTC.

11.    As part of this transaction, Suncor entered into an exclusive Phillips 66 Trademark License Agreement, effective as of August 1, 2003, with ConocoPhillips, the successor to Conoco and Phillips (the "Agreement").  Ex. C (Phillips 66 Trademark License Agreement; exhibits to Agreement redacted).

12.    Under Section 2.01 of the Agreement, ConocoPhillips granted to Suncor the exclusive royalty-free license to use the Marks and/or Service Marks, as those terms are defined in the Agreement, in connection with the sale of Phillips 66 branded motor fuels and other ancillary products in the State of Colorado for a period of 10 years or until July 31, 2013. *Id.* at § 2.01.

4

13.     As ordered by the FTC, Section 7.02 of the License Agreement requires that "[a]t the conclusion of the ninth year of the Term, COMPANY [Defendants] shall offer to meet with Suncor in good faith to discuss a renewal of [the] Agreement." *Id*. at § 7.02; Ex. A at III.C.2.

14.     The Colorado Assets acquired by Suncor from ConocoPhillips included all of the Phillips 66 branded retail gas stations, or marketing premises, previously owned by Phillips in the State of Colorado, and all of Phillips' agreements with third party petroleum marketers ("Branded Marketers") to sell Phillips 66 branded fuel to be resold at third party Phillips 66 branded retail gas stations, or marketing premises, in Colorado.

15.     In 2012, ConocoPhillips spun off its refining and marketing assets into PSX. Upon information and belief, these assets included the trademarks "PHILLIPS," "66," "PHILLIPS 66," "CONOCO," and "76." Upon information and belief, these assets included all of ConocoPhillips' agreements with third party petroleum marketers selling or supplying CONOCO branded fuel at and to third party CONOCO branded retail gas stations, or marketing premises, in Colorado.

16.     Upon information and belief, ConocoPhillips assigned the Agreement to PSX. Suncor has consented to the Assignment of the Agreement.

17.     Since August 2003, Suncor has been the exclusive supplier of Phillips 66 branded motor fuel at over 46 marketing premises in Colorado. Suncor owns six of the Phillips 66 branded retail gas stations, or marketing premises, and sells Phillips 66 branded motor fuel directly to the consuming public at those locations. Suncor also sells Phillips branded 66 motor fuel to 15 Branded Marketers that supply 40 additional Phillips 66 branded retail gas stations, or marketing premises. These additional premises are either owned and operated by the Branded Marketers directly or supplied by the Branded Marketers to independent dealers, which own and

5

operate the premises. Both the Branded Marketers and the independent dealers (through their agreements with the Branded Marketers) have the right to sell motor fuel under the Phillips 66 brand by virtue of Suncor's rights under the Agreement.

18. Suncor invested in the Phillips 66 trademarks creating significant goodwill for Defendants in Colorado at a time when Defendants could not do it themselves. During the term of the Agreement, Suncor owned, supported, and supplied Phillips 66 branded retail facilities, sold and distributed Phillips 66 branded motor fuel in Colorado, and spent significant amounts promoting the Phillips 66 brand of motor fuels in Colorado by advertising on television, radio, billboards, newspapers and magazines.

**Renewal Negotiations and Non-Renewal of the Agreement**

19. On July 30, 2012, prior to the conclusion of the ninth year of the term of the Agreement, PSX offered to meet with Suncor to discuss renewal terms of the Agreement.

20. On August 29, 2012, Suncor accepted the offer to negotiate and requested that PSX make a written proposal of the renewal terms. Suncor noted that its current Agreement was an exclusive license in Colorado, and that PSX was required to meet in good faith to discuss a renewal of the exclusive Agreement under Section 7.02. Suncor expressed its desire to discuss a renewal of the Agreement on an exclusive basis.

21. On September 24, 2012, PSX advised Suncor it would renew the Agreement on a non-exclusive basis for only one year. Ex. D (Letter dated September 24, 2012). PSX did not present Suncor with a renewal agreement to consider or sign, and the proposal lacked definitive terms.

6

22.    PSX's proposed change of a one-year term of renewal is not in line with the industry standard of a minimum of three years for franchise agreements and renewals governed by the PMPA.

23.    A one-year term of renewal of the Agreement, whether exclusive or non-exclusive, would place Suncor at a competitive disadvantage to PSX, as it would limit Suncor's ability to renew and extend Suncor's motor fuel supply agreements with its Phillips 66 Branded Marketers obtained pursuant to FTC Order to promote competition, and would give PSX an advantage in attempting to sign those Phillips 66 Branded Marketers away from Suncor.  In addition, a one-year term would limit Suncor's ability to continue to sell Phillips 66 branded motor fuel at the Phillips 66 branded retail stations owned by Suncor – diminishing the value of those assets obtained pursuant to the FTC Order.

24.    Upon information and belief, PSX made its offer knowing and with the intent that it would place Suncor at competitive disadvantage to PSX for the reasons set forth in paragraphs 22 and 23 of this Complaint, among others.

25.    From September 24, 2012 to April 16, 2013, Suncor and PSX continued to negotiate the terms of the renewal agreement.

26.    On February 15, 2013, PSX reiterated its prior proposal of a renewal of the Agreement for one year on a non-exclusive basis.  In the same breath, PSX extended an invitation for Suncor to make an alternative proposal, stating:  "As we have previously expressed, should you have an interest in proposing something different, we would be happy to receive such a proposal and discuss."  Ex. E (E-mail dated February 15, 2013).  Again, PSX did not present Suncor with a written renewal agreement to consider or sign.

27.    On April 10, 2013, in response to PSX's invitation, Suncor expressed its willingness to enter into a 10-year extension of the Agreement on an exclusive basis, and requested a further offer from PSX.

28.    During the parties' negotiations from September 24, 2012 to April 16, 2013, PSX never presented Suncor with a written renewal agreement or other document to consider or sign, and never identified any specific terms of its renewal proposal other than the duration (one year) and that it would be non-exclusive.  In addition, in all communications where PSX extended its proposed change to the franchise, PSX invited Suncor to make an alternative proposal.  PSX never characterized its proposed change as final or "take it or leave it."

29.    During the parties' negotiations from September 24, 2012 to April 16, 2013, Suncor never refused to agree to a renewal of the Agreement on a non-exclusive basis, including for a term less than 10 years.

30.    On April 16, 2013, PSX notified Suncor that the Agreement would not be renewed or replaced pursuant to § 2804 of the PMPA.  Pursuant to PSX's notice, the purported basis for the non-renewal was Suncor's failure to agree to a renewal of the Agreement on terms that included its proposed change to the franchise, i.e. a non-exclusive license and a one-year term.  Ex. F (Letter dated April 16, 2013).  PSX claimed its proposed changes to the Agreement were determined in good faith and in the normal course of its business.  *Id*.

31.    Despite PSX's non-renewal of the Agreement, in the same notice, PSX stated that "if Suncor desires to make an alternative proposal up until the Expiration Date below [July 31, 2013], PSX continues to be willing to receive such a proposal and discuss."  *Id.*

32.    Suncor and PSX were still actively negotiating the renewal of the Agreement at time of PSX's non-renewal notice on April 16, 2013.

8

33.     As a result of PSX's non-renewal, Suncor's motor fuel franchise with Defendants will end effective July 31, 2013 without relief from this Court.

34.     Since giving notice of its intention to not renew the Agreement, PSX has leveraged its considerable bargaining power by proposing changes that are far less favorable to Suncor than the changes to the franchise it proposed before the April 16th notice was issued.

35.     On May 21, 2013, following further renewal negotiations with Suncor, PSX proposed to renew the Agreement on a non-exclusive basis for three years for a stated license fee for a more limited territory than the entire State of Colorado, which was the implied geographic scope of the prior proposed change.  PSX's limited its May 21st proposal to a territory consisting solely of Moffat, Rio Blanco and Garfield Counties, west of the 108 degree longitude, in Colorado.  This proposed change would also include the six specific stores owned by Suncor, but would not include the geographic territory in which they are located – limiting any future growth by Suncor in those areas (collectively, the "May 21st Proposal").  In the May 21st Proposal, PSX purposefully did not offer any license for the territories consisting of the eastern slope of the State of Colorado and most of the mountain towns, excluding all the major markets in the State including the Denver Metropolitan Area, Colorado Springs, Fort Collins, Vail, and Avon.

36.     PSX's May 21st proposed changes and additions to the franchise would cause Suncor to lose the right to sell motor fuel under the Phillips 66 brand at 31 of the 46 branded stores in its Phillips 66 Branded Marketer network on July 31, 2013.  This proposal would again place Suncor at a competitive disadvantage to PSX, including by undermining Suncor's business and contractual relationships with its Phillips 66 Branded Marketers – most of whom Suncor obtained pursuant to FTC Order and has been supplying since 2003.

37.     PSX knows and intends that its May 21st proposed changes would cause Suncor to debrand 31 of Suncor's 46 Phillips 66 branded retail stores and place Suncor at a competitive disadvantage to PSX, including by undermining Suncor's business and contractual relationships with its Phillips 66 Branded Marketers.

38.     On June 5, 2013, under the threat of losing its Agreement effective July 31, 2013, Suncor made two renewal proposals to PSX:  (1) to accept PSX's prior proposed changes to the franchise to extend the Agreement a one-year non-exclusive basis, and clarifying that there would continue to be no royalty fee for the term, or (2) to accept PSX's May 21st Proposal, except that the license would extend to all of the 46 specific Phillips 66 branded retail gas stations (and not just the six Suncor owned retail gas stations) within Suncor's Phillips 66 Branded Marketer network.  PSX rejected both proposals.

39.     Despite PSX's earlier claim that its proposed changes to the franchise in its prior one-year non-exclusive offer were determined in good faith and in the normal course of its business, PSX refused to renew the franchise relationship on those terms.

40.     PSX's proposed changes to the franchise serving as the basis of its non-renewal are not made in good faith or in the normal course of its business.  To the contrary, the changes are made to terminate the franchise relationship between PSX and Suncor so that PSX can be the exclusive seller and marketer of the Phillips 66 brand of petroleum products, including motor fuel, in Colorado.

41.     PSX's proposed changes to the renewal of the Agreement are vastly different from renewal agreements offered to other PSX franchisees.  For example, PSX offered a renewal agreement on a non-exclusive basis with Holly Frontier, its franchisee for Utah, Idaho, Wyoming, and Montana, for seven years.

10

42.    Defendants will suffer no hardship if the status quo is maintained until this litigation is fully adjudicated.  Suncor would remain the exclusive provider of Phillips 66 branded motor fuel in Colorado as it has been for the last 10 years.  Defendants have not made, nor can make, any claims that Suncor violated any term of the Agreement, failed to properly invest in the Phillips 66 brand, or that its stewardship of the Phillips 66 trade name, mark and dress in Colorado has diminished the brand in any way.  As such, there is no hardship on Defendants to continue their franchise relationship with Suncor.

**COUNT I**
**VIOLATION OF FEDERAL PETROLEUM MARKETING PRACTICES ACT**

43.    Suncor repeats and realleges each of the foregoing paragraphs of its Complaint, as if set forth in full.

44.    Throughout the term of the Agreement Suncor has purchased, and received from exchange agreements, gasoline and diesel fuel from third parties, including Defendants, which motor fuel Suncor resells to Phillips 66 Branded Marketers and the consuming public under the Phillips 66 brand.  Suncor continues to currently purchase, and receive from exchange agreements, motor fuel from third parties, including PSX.

45.    Suncor is a distributor and retailer as defined by the PMPA.  15 U.S.C. §§ 2801(6)(A) & (7).

46.    Defendants are refiners as defined by the PMPA.  15 U.S.C. § 2801(5).

47.    A motor fuel franchise relationship exists between Suncor and Defendants, the termination or non-renewal of which is governed by the PMPA.  15 U.S.C. §§ 2801-2806.

48.    Section 2802(b)(3)(A) of the PMPA only permits non-renewal of a franchise relationship upon the "the failure of the franchisor and the franchisee to agree to changes or

11

additions to the provisions of the franchise," and where "such changes or additions are the result of determinations made by the franchisor in good faith and in the normal course of business."

49. Defendants, through the conduct of PSX, have given written notice of their intention to not renew the franchise and franchise relationship that exists between Defendants and Suncor based on the failure of the parties to agree to PSX's proposed changes and additions to the franchise.

50. Defendants, through the conduct of PSX, willfully disregarded the PMPA by unlawfully non-renewing the motor fuel franchise and franchise relationship in that the parties did not fail to agree on proposed modifications to the franchise relationship and the changes or additions to the franchise and franchise relationship were not made by PSX in good faith and not in the normal course of business.

51. Defendants, through the conduct of PSX, insisted upon such changes or additions for the purpose of preventing the renewal of the franchise relationship, in violation of § 2802(b)(3)(A).

52. As a direct and proximate result of the non-renewal of the franchise relationship, Suncor will suffer damages.

**COUNT II**
**INJUNCTIVE RELIEF UNDER 15 U.S.C. § 2805 OF FEDERAL PETROLEUM MARKETING PRACTICES ACT**

53. Suncor repeats and realleges each of the foregoing paragraphs of its Complaint, as if set forth in full.

54. Defendants have not renewed the franchise agreement with Suncor.

12

55.    There exist sufficiently serious questions going to the merits of Defendants' good faith and conduct, outside of the normal course of business, to provide a fair ground for litigation.

56.    The balance of hardships weighs in favor of Suncor.

57.    Suncor thus is entitled to injunctive relief under 15 U.S.C. § 2805.

WHEREFORE, Suncor demands judgment against Defendants as follows:

a.    A declaration that Defendants' willful failure to renew their franchise and franchise relationship with Suncor is unlawful under the PMPA;

b.    An injunction continuing the terms of the Agreement until further order of the Court;

c.    Compensatory damages;

d.    Punitive damages in such amount as may be deemed appropriate for Defendants' willful disregard of the PMPA;

e.    Interest, costs, reasonable attorney's fees and expert witness fees; and

f.    Such additional relief as the nature of the case may require.

## JURY DEMAND

Suncor demands a trial by jury on all issues so triable.

Dated this 14th day of June, 2013.

Respectfully submitted,

*s/Daniel M. Reilly*

Daniel M. Reilly, #11468
dreilly@rplaw.com
REILLY POZNER LLP
1900 Sixteenth Street, Ste. 1700
Denver, CO 80202
Telephone: (303) 893-6100

13

*s/ Eric Fisher*
Eric Fisher, # 27275
efisher@rplaw.com
REILLY POZNER LLP
1900 Sixteenth Street, Ste. 1700
Denver, CO 80202
Telephone: (303) 893-6100


*s/ John M. McHugh*
John McHugh, # 45456
jmchugh@rplaw.com
REILLY POZNER LLP
1900 Sixteenth Street, Ste. 1700
Denver, CO 80202
Telephone: (303) 893-6100


Of Counsel A. Christopher Young, admission pending
Jennifer L. Maher, admission pending
PEPPER HAMILTON LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103
Telephone: (215) 981-4000
Facsimile:  (215) 981-4750

*Attorneys for Plaintiff, Suncor Energy (U.S.A.) Inc.*

14