## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| SUNCOR ENERGY (U.S.A.) INC.,<br>a Delaware corporation | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| -v- | : | |
| | : | Civil Action No.  1:13-cv-01571-RM-BNB |
| PHILLIPS 66 COMPANY,<br>a Delaware corporation | : | |
| | : | |
| and | : | |
| | : | |
| CONOCOPHILLIPS COMPANY,<br>a Delaware corporation | : | |
| | : | |
| Defendants. | : | |

## SUNCOR'S BENCH BRIEF REGARDING DEFENDANTS' OPPOSITION TO SUNCOR'S MOTION FOR PRELIMINARY INJUNCTION

Plaintiff Suncor Energy (U.S.A.) Inc. ("Suncor") filed its Preliminary Injunction Motion on June 24.  Defendants waited until late yesterday evening to file their opposition (the "Opposition").  Suncor will file a reply that will fully address Defendants' arguments and newly cited authority, and will address Defendants' Opposition at the hearing tomorrow.  Suncor, however, believes it will benefit the Court to have, in advance of the hearing, Suncor's preliminary responses to Defendants' positions and assertions.  In addition, on today's date, Suncor submitted a separate Bench Brief Addressing Application of the PMPA, which addresses Defendants' arguments regarding the applicability of the PMPA raised in their Motion to Dismiss and Opposition.

**I.     Suncor's Business Plan Is to Pursue a Long-Term Extension of the Phillips 66 License Agreement to Maintain and Develop the Brand – Not to Abandon It**

Defendants expend much of their Opposition attempting to demonize Suncor, and postulate its present intent, based on discussions and events that occurred in 2007 and in early

1

1393441

2012 – prior to Defendants' July 30, 2012 invitation to negotiate a renewal of the License Agreement.  Notwithstanding that these old discussions and events are irrelevant to the two central issues in the case (whether the PMPA applies and whether Defendants violated the PMPA by improperly nonrenewing the parties' franchise), it is important to correct several inaccurate factual assertions and inferences raised by Defendants – which Suncor will address in more detail at the hearing tomorrow.

First, Suncor's current business plan is to enter into a long-term extension of the Phillips 66 license agreement – as reflected by Suncor's negotiations with Defendants since July 30, 2012.  In 2009, Suncor did indeed obtain rights to the Shell brand after Suncor was unable in 2007 to reach an agreement with ConocoPhillips for the 76 brand (and not the Phillips 66 brand – which was not offered), and Suncor's business plan at that time was to transition many of its Branded Marketers and Phillips 66 stores to the Shell brand.  In mid-2012, however, circumstances changed, and Suncor re-evaluated its business plan.  Suncor determined that its current Phillips 66 Branded Marketer network, which still represents a substantial percentage of its overall branded channel, would be lost if Suncor did not continue the Phillips 66 brand on a long term basis – as these Branded Marketers were either unwilling or unable to transition to the Shell brand.  In addition, Suncor determined that there was value in continuing to operate under two quality brands – rather than just one.  Therefore, commencing in July, 2012, Suncor was negotiating to preserve this value through a long-term renewal of the relationship.

Second, Suncor desires to continue to operate the Phillips 66 brand on a long term basis to continue the value of these branded marketer assets and relationships transferred to Suncor as part of the 2003 FTC Order, and developed by Suncor over the past ten years.  Unless and until

2

1393441

Suncor receives the certainty of an extension of the Phillips 66 brand, it is unable to take effective actions to maintain and grow its Phillips 66 branded business on a long term basis.

Third, Defendants' inference that they may terminate the franchise relationship because Suncor allegedly "abandoned the brand" is both nonsensical and directly contrary to the protections of the PMPA. Defendants do not, and cannot allege, that Suncor is in violation of any terms of the License Agreement, including those specifically addressing the protection of the brand. Neither do Defendants raise any other basis for non-renewal permitted by the PMPA. Further, before its Opposition, Defendants have never asserted in the prior 10 years that the brand has somehow been damaged by Suncor's transition of some branded stores to another brand, which is Suncor's right. This entire line of argument ignores that if Suncor had entered into a license agreement with ConocoPhillips for the 76 brand (instead of Shell), a complete transition out of the Phillip 66 brand would have likely occurred whereas Suncor continues to maintain and support a Phillips 66 brand presence. Regardless, a franchisee's intentions during the term of its franchise agreement have no bearing on its right to continue its franchise relationship. The PMPA protects that relationship from nonrenewal or termination, except in limited, specific circumstances. In short, Defendants' Opposition suggests that their intent is to force an end to the parties' franchise relationship.

Finally, Defendants largely ignore the most critical facts in this case—the negotiations between the parties reflecting Suncor's unequivocal desire to enter into a long-term renewal of the Phillips 66 franchise. It is these negotiations – from July 30, 2012 onwards – that are central to determining whether Defendants violated the PMPA by improperly and prematurely nonrenewing the License Agreement. At a minimum, Defendants' offer of a one-year, nonexclusive license in purported compliance with the "good faith" and "normal course of

3

1393441

business" requirements of the PMPA, and subsequent refusal to accept Suncor's agreement to those terms just a few months later, alone creates a serious question going to the merits of whether Defendants' renewal offers were a pretext to nonrenew the License Agreement.

**II.      Defendants Cannot Meet the Requisite Standards for Nonrenewal Under the PMPA**

        A.      <u>There Was No Failure to Agree</u>

Defendants admit that they sent on April 16, 2013 their "prophylactic Notice of Non-Renewal" *during the parties' discussions as to terms of renewal*.  Doc. 25 at 11.  While stating that "the parties never agreed to terms" and that "the record reflects offers and counteroffers, none of which was accepted," Defendants do not dispute that such offers and counteroffers occurred *before and after* Defendants' April 16, 2013 Notice of Non-Renewal.  As of April 16, 2013—the critical date here—the parties were still exchanging offers and thus there was no failure to agree *at the time* Defendants nonrenewed the license agreement in violation of the PMPA.  Under similar facts, in *Eden v. Texaco Ref. and Mktg., Inc.*, 644 F. Supp. 1573 (D. Md. 1986), the Court did not find a failure to agree.  That this case was withdrawn, likely at the request of the parties after a settlement was reached, in no way diminishes the persuasive reasoning supporting the decision.  On this ground alone, there are serious questions to the merits that support the issuance of a preliminary injunction.

        B.      <u>Defendants Failed to Act in Good Faith and in the Ordinary Course of Business</u>

Defendants baldly claim that "[t]here is no evidence that Defendants' subjective intention was to refuse to renew the TLA or that their negotiations were just pretextual."  Doc. 25 at 11. Defendants arrive at this conclusion by conspicuously ignoring the wealth of facts set forth in Suncor's motion establishing precisely such intention, including Defendants' latest "offer" that required Suncor to debrand 30 of its Phillips 66 branded stores, not to be able to use the Phillips

4

66 at all in the vast majority of Colorado, and Defendants' rejection of Suncor's acceptance of their prior offer of a one-year, nonexclusive license renewal.

Defendants further claim, with *no evidentiary support*, that "the evidence shows that Defendants sought to renew the TLA on terms that *supported their overall business plan*" and that "Defendants expended significant resources negotiating with Plaintiff and, *after employing their usual decision-making process*, offered several proposals to extend the TLA." Doc. 25 at 11-12. At the hearing tomorrow, Suncor will challenge whether Defendants' conduct was made in good faith and in the normal course of business. Suncor also should be entitled to test, through the normal course of discovery, Defendants' unsupported, and unsupportable, assertions as to "their overall business plan" and whether it was pretext for preventing the nonrenewal of the franchise relationship, and how they arrived at their draconian offers in the "usual decision-making process."

As stated above, Defendants' assertion that the gradual reduction of Phillips 66 stores was "devastating" (Doc. 25 at 5) is made for the first time after Suncor filed suit and only one day prior to the preliminary injunction hearing. Not once in 10 years did Defendants make any such claim nor did they raise such assertion as a basis for nonrenewal in their April 16, 2013 Notice of Nonrenewal under the PMPA. Further, as Suncor will establish at tomorrow's hearing and in its reply, Defendants' 12-year renewal of the Phillips 66 brand with Holly on a nonexclusive basis in four states, is not "very similar terms to those" offered to Suncor. *Id.* at 13. Defendants never offered more than a one-year, nonexclusive license, and when Suncor sought to accept that offer, refused to agree. Defendants instead sought to force Suncor to abandon approximately 30 of its Phillips 66 branded locations and to permanently prevent Suncor from

1393441

competing in the vast majority of Colorado.  There unquestionably are "serious questions going to the merits" of Defendants' subjective intentions in nonrenewing the License Agreement.

**III.    Any Harm to Defendants Is Based on Their Refusal to Accept Suncor's Agreement to a One-Year, Nonexclusive License**

Suncor desires to maintain the value of its Phillips 66 branded network obtained as a result of the 2003 FTC Order and further developed by Suncor over the past ten years.  This network remains an important source of consistent and predictable supply for Suncor's refinery, which supports the refinery's production, planning, and operation.  Suncor seeks to maintain and grow these Phillips 66 brand assets, and to retain the value it has invested.  Defendants seek to take those Phillips 66 branded locations from Suncor.  Suncor will be substantially harmed if Defendants are allowed to terminate Suncor's Phillips 66 branded locations and prevent it from competing in Colorado under the Phillips 66 brand as of August 1.  If that is allowed to occur, Suncor will forever lose its Phillips 66 Branded Marketers and the value of those assets.  They will not be converted to the Shell brand.  The harm will be permanent, and there will be no turning back.

As for Defendants, they will not be harmed.  They can continue to operate, compete, and grow under the Conoco brand as they have for the past ten years.  As they currently have no rights to the Phillips 66 brand, Suncor assume that they have not entered into any contracts regarding the Phillips 66 brand as of this date.  Further, as for Defendants' purported claim of loss of "reputation and goodwill," there is no basis for such claim which is made for the first time on the eve of the injunction hearing.  And, Defendants could have avoided any purported harm by allowing Suncor to compete in Colorado on a non-exclusive basis under the Phillips 66 brand while it also seeks to grow the Phillips 66 brand.  Defendants instead chose to implement its "overall business plan" to eliminate Suncor as a competitor.  This outcome should not be

1393441

allowed to occur while a decision on the merits in this case is pending.  Suncor, therefore, respectfully requests that this Court grant its motion and enter a preliminary injunction.

Dated this 11th day of July, 2013.

*s/Eric Fisher*
Eric Fisher, # 27275
efisher@rplaw.com
Daniel M. Reilly, # 11468
dreilly@rplaw.com
John McHugh, # 45456
jmchugh@rplaw.com
REILLY POZNER LLP
1900 Sixteenth Street, Ste. 1700
Denver, CO 80202
(303) 893-6100

A. Christopher Young
Jennifer L. Maher
PEPPER HAMILTON LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103
(215) 981-4000

*Attorneys for Plaintiff, Suncor Energy (U.S.A.) Inc.*

1393441

## CERTIFICATE OF SERVICE

I hereby certify that on July 11, 2013, a true and correct copy of the foregoing SUNCOR'S BENCH BRIEF REGUARDING DEFENDANTS' OPPOSITION TO SUNCOR'S MOTION FOR PRELIMINARY INJUNCTION was filed electronically with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

David Goldberg
goldbergd@gtlaw.com
Jeffrey Lippa
lippaj@gtlaw.com
Troy Eid
eidt@gtlaw.com
Adam Ross
rossa@gtlaw.com

_s/ Eric Fisher_
Eric Fisher

8

1393441